[ORAL ARGUMENT NOT YET SCHEDULED]
No. 22-7154

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CAMEROON WHITERU, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF OKIEMUTE C. WHITERU; AGNES WHITERU,

*Plaintiffs-Appellants*,

*- v. -*

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,

*Defendant-Appellee.*

On Appeal from the United States District Court for the District of Columbia
Case No. 1:15-CV-00844-JEB

**BRIEF FOR DEFENDANT-APPELLEE
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

Michael Weisbuch
AKIN GUMP STRAUSS HAUER &
  FELD LLP
100 Pine Street
Suite 3200
San Francisco, CA 94111
(415) 765-9501

Pratik A. Shah
Anthony T. Pierce
Caroline L. Wolverton
AKIN GUMP STRAUSS HAUER &
  FELD LLP
2001 K Street NW
Washington, D.C. 20006
(202) 887-4000
pshah@akingump.com

*Attorneys for Defendant-Appellee
Washington Metropolitan Area Transit Authority*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

Plaintiffs-Appellants are Cameroon Whiteru, Individually and as Personal Representative of the Estate of Okiemute C. Whiteru, and Agnes Whiteru.

Defendant-Appellee is the Washington Metropolitan Area Transit Authority.

There are currently no parties who have intervened or moved to file an *amicus* brief before this Court.

### B.    Rulings Under Review

Appellants seek review of the district court's October 14, 2022, order granting Defendant's motion for summary judgment, issued by the Honorable James E. Boasberg, JA 793, and the accompanying memorandum opinion, JA 794-807.

### C.    Related Cases

The case on review was previously before this Court.  *See Whiteru v. Washington Metropolitan Area Transit Authority*, No. 20-7087.  Counsel is not aware of any other related cases.

*/s/ Pratik A. Shah*
Pratik A. Shah

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES................i

TABLE OF AUTHORITIES................................................................iv

GLOSSARY ............................................................................ viii

STATEMENT OF ISSUES ................................................................1

INTRODUCTION ..........................................................................2

STATEMENT OF THE CASE..............................................................4

    A.    Factual Background ..............................................................4

    B.    Procedural History .............................................................4

SUMMARY OF ARGUMENT............................................................7

STANDARD OF REVIEW ................................................................9

ARGUMENT ..............................................................................10

    I.    A PASSENGER INJURED AFTER ENTERING A RESTRICTED AREA CAN RECOVER ONLY FOR INTENTIONAL, WILLFUL, OR WANTON MISCONDUCT .........10

    A.    D.C. Law Distinguishes Trespassers From Other Injured Persons ..........................................................................10

    B.    A Passenger Who Enters An Off-Limits Area In A Train Station Becomes A Trespasser .................................................13

    C.    Trespassers May Recover Only For Intentional, Willful, Or Wanton Conduct................................................................17

        1.    *Breach of the duty to trespassers requires extreme misconduct.* ...............................................................17

        2.    *A common carrier's failure to timely discover and aid an unknown trespasser is not a breach of the duty of care.* ................................................................17

    D.    The Restatement Confirms The Lesser Duty For Passengers-Turned-Trespassers ...........................................23

        1.    *Section 329 of the Second Restatement reinforces the trespasser rules articulated in D.C. law.*..................23

        2.    *Section 314A of the Second Restatement is inapplicable.* ................................................................25

        *3.*     *Neither this Court's decision in the prior appeal nor decisions from other jurisdictions support applying Section 314A here.* ........................................................... 28

II.     WMATA DID NOT BREACH ITS DUTY TO WHITERU .............. 30

     A.    Whiteru Became A Trespasser When He Fell Into The Trough Area That Is Not Held Open To Passengers ................. 30

     B.    Plaintiffs Do Not Allege Any Intentional, Willful, Or Wanton Misconduct .................................................................. 33

     C.    Whiteru's Contributory Negligence Bars Recovery Given His Trespasser Status .............................................................. 34

CONCLUSION ........................................................................................... 36

# TABLE OF AUTHORITIES

## CASES:

*Belton v. WMATA,*
    20 F.3d 1197 (D.C. Cir. 1994)................................................16, 18, 19

*Boyrie v. E & G Prop. Servs.,*
    58 A.3d 475 (D.C. 2013) ..............................................21, 31, 32, 33

*Briggs v. WMATA,*
    481 F.3d 839 (D.C. Cir. 2007)................................................10, 14, 26

*Brown v. Consolidated Rail Corp.,*
    717 A.2d 309 (D.C. 1998) ...............................................................27

*Callaway v. Scrivner, Inc.,*
    No. CIV. A. 90C-AP1, 1991 WL 113437 (Del. Super. Ct. June 12,
    1991) ...............................................................................................30

*Chvala v. D.C. Transit Sys., Inc.,*
    306 F.2d 778 (D.C. Cir. 1962).................................................14, 23

*Continental S. Lines, Inc. v. Robertson,*
    133 So. 2d 543 (Miss. 1961).............................................................29

*Copeland v. Baltimore & Ohio R.R. Co.,*
    416 A.2d 1 (D.C. 1980) .......................... 15, 16, 17, 19, 24, 30, 33, 34

*Coulston v. WMATA,*
    No. 19-2060 (TJK), 2020 WL 1236563 (D.D.C. March 13, 2020) .......15, 17, 34

*Daisey v. Colonial Parking, Inc.,*
    331 F.2d 777 (D.C. Cir. 1963).........................................11, 12, 21, 22

*District of Columbia v. Brown,*
    589 A.2d 384 (D.C. 1991) ...............................................................33

*Estrada v. Potomac Elec. Power Co.,*
    488 A.2d 1359 (D.C. 1985) ..............................................................18

*Firfer v. United States*,
  208 F.2d 524 (D.C. Cir. 1953).................... 10, 11, 12, 13, 14, 15, 26, 31, 32, 33

*Foshee v. Consolidated Rail Corp.*,
  661 F. Supp. 350 (D.D.C. 1987).........................................................12
  849 F.2d 657 (D.C. Cir. 1988).............................................................13

*Frederick v. Philadelphia Rapid Transit Co.*,
  10 A.2d 576 (Pa. 1940)........................................................24, 25, 30

*Gould v. DeBeve*,
  330 F.2d 826 (D.C. Cir. 1964)..........................................11, 12, 34

*Hines v. WMATA*,
  No. 21-cv-679 (DLF), 2022 WL 392306 (D.D.C. Feb. 9, 2022) ...........14, 16, 19

*Holland v. Baltimore & Ohio R.R. Co.*,
  431 A.2d 597 (D.C. 1981) ................................................ 12, 13, 18, 19, 21, 25,

*Jarrett v. Woodward Bros., Inc.*,
  751 A.2d 872 (D.C. 2000) ..................................................................34

*Johnson v. WMATA*,
  764 F. Supp. 1568 (D.D.C. 1991)........................................ 15, 17, 19, 20, 22, 33

*Lacy v. Sutton Place Condo. Ass'n*,
  684 A.2d 390 (D.C. 1996) ....................................................12, 19, 33

*Luck v. Baltimore & Ohio R.R. Co.*,
  510 F.2d 663 (D.C. Cir. 1974).............................................................21

*M.A.P. v. Ryan*,
  285 A.2d 310 (D.C. 1971) .................................................................10, 11

*McKethean v. WMATA*,
  588 A.2d 708 (D.C. 1991) .................................................................14, 26

*Novak v. Capital Mgmt. & Dev. Corp.*,
  452 F.3d 902 (D.C. Cir. 2006)..............................................................10

*Oviedo v. WMATA*,
  948 F.3d 386 (D.C. Cir. 2020)............................................................9, 10

*Pridgen v. Boston Hous. Auth.*,
  308 N.E.2d 467 (Mass. 1974)...................................................................29

*Radzanower v. Touche Ross & Co.*,
  426 U.S. 148 (1976)..................................................................................27

*Safeway Trails, Inc. v. Schmidt*,
  225 A.2d 317 (D.C. 1967) ........................................................................17

*Smith v. Arbaugh's Rest., Inc.*,
  469 F.2d 97 (D.C. Cir. 1972)...............................................................11, 12, 21

*Toomer v. William C. Smith & Co.*,
  112 A.3d 324 (D.C. 2015) ............................................................11, 12, 17, 34

*United Zinc. & Chem. Co. v. Britt*,
  258 U.S. 268 (1922)..................................................................................16

*Whitaker v. WMATA*,
  No. 82-cv-2771, 1984 U.S. DIST. LEXIS 16712 (D.D.C. May 14,
  1984) ................................................................ 15, 17, 22, 26, 32, 33

*Whiteru v. WMATA*,
  No. 15-cv-0844 (KBJ), 2018 WL 6605427 (D.D.C. Dec. 17, 2018) .................5
  480 F. Supp. 3d 185 (2020) .......................................................................35
  25 F.4th 1053 (D.C. Cir. 2022)............................................................5, 34, 35

*Wilkins v. United States*,
  143 S. Ct. 870 (2023).............................................................................28, 29

*Winfrey v. GGP Ala Moana LLC*,
  308 P.3d 891 (Haw. 2013) .........................................................................29

*WMATA v. Jeanty*,
  718 A.2d 172 (D.C. 1998) ...................................................................23, 25, 34

*WMATA v. O'Neill*,
  633 A.2d 834 (D.C. 1993) .........................................................................20

*WMATA v. Ward*,
  433 A.2d 1072 (D.C. 1981) ...................................................................12, 15, 32

*Yazoo & M.V.R. Co. v. Byrd*,
   42 So. 286 (Miss. 1906)..............................................................26, 27

**OTHER AUTHORITIES:**

Dobbs, Dan B. et al., DOBBS' LAW OF TORTS § 273 (July 2022
   Update)..................................................................................20

Fed. R. Civ. P.
   6(b)(1)(B)..................................................................................5
   56(a)......................................................................................10

Henderson, James A., Jr., *The Status of Trespassers on Land*, 44
   WAKE FOREST L. REV. 1071 (2009)...........................................13, 30

McNiece, Harold F. & John V. Thornton, *Affirmative Duties in Tort*,
   58 YALE L.J. 1272 (1949)..............................................................22

RESTATEMENT (FIRST) OF TORTS (1934)
   § 329.......................................................................................13

RESTATEMENT (SECOND) OF TORTS (1965)
   § 12........................................................................................20
   § 314A............................................................................5, 7, 35
   § 314A(1)..................................................................................25
   § 314A cmt. c............................................................................26
   § 314A cmt. d, illus. 1....................................................24, 26, 27
   § 329....................................................................3, 6, 7, 23, 24
   § 333.......................................................................................24
   § 336.......................................................................................24

Weinrib, Ernest J., *The Case for a Duty to Rescue*, 90 YALE L.J. 247
   (1980)......................................................................................22

## GLOSSARY

WMATA:    Washington Metropolitan Area Transit Authority

## STATEMENT OF ISSUES

Whether the district court properly granted summary judgment to WMATA under D.C. law because the undisputed facts establish that Whiteru was a trespasser at the time of his injury, and because (i) Plaintiffs have not alleged (nor is there any evidence) that WMATA engaged in intentional, willful, or wanton misconduct, or, alternatively, (ii) Plaintiffs' claims are barred by Whiteru's contributory negligence in light of his trespasser status.

**INTRODUCTION**

Plaintiffs-Appellants seek to hold Defendant-Appellee Washington Metropolitan Area Transit Authority (WMATA) liable for Okiemute Whiteru's tragic death in the Judiciary Square Metro station.  In the district court's words, "[o]ne night in a highly intoxicated state, *** Whiteru fell backwards over the parapet wall that runs along the edge of the platform," and, upon "[l]anding in a trough behind the wall, he sustained severe injuries and ultimately died."  Plaintiffs' theory of liability is not that WMATA negligently caused Whiteru's fall, but that WMATA negligently failed to timely discover and aid Whiteru after he fell.

As the district court recognized in granting WMATA's Second Supplemental Motion for Summary Judgment, on remand from a prior appeal, Plaintiffs' theory fails under two straightforward principles of D.C. tort law.  *First*, a common carrier passenger becomes a trespasser when he enters an area that is not held open to passengers, even if accidentally.  *Second*, common carriers generally owe a lesser duty to trespassers than to passengers, *i.e.*, a duty not to harm them by engaging in intentional, willful, or wanton misconduct.  Although a common carrier must take reasonable steps to aid *passengers* it has reason to know are injured, it has no similar duty to aid *unknown trespassers*.  Plaintiffs attempt to blur those established distinctions by mischaracterizing settled D.C. law and invoking irrelevant non-D.C.

2

authorities to assert a heightened duty for purportedly "foreseeable" trespassers. But controlling D.C. precedent leaves no room for their revisionist framework.

Section 329 of the Restatement (Second) of Torts reinforces what D.C. case law makes clear and forecloses Plaintiffs' legal theory. Section 329 provides—in a remarkably on-point example—that a lesser duty applies to a passenger-turned-trespasser who fell into a restricted area within a train station. Although Plaintiffs rely heavily on an illustrative example from Section 314A, neither that illustration nor the case on which it is based discusses trespassers, let alone unknown trespassers like Whiteru. Nor does this Court's prior reading of Section 314A—that a common carrier may be liable for failing to aid a passenger despite the passenger's contributory negligence—support a duty to discover and aid an unknown trespasser (an issue neither briefed nor adjudicated previously). Adopting such a duty would trample the D.C. Court of Appeals' supremacy as to D.C. tort law.

The district court correctly held that WMATA is entitled to summary judgment. There is no genuine dispute that Whiteru fell into an area that is not held open to passengers before WMATA's alleged failure to timely discover him. Whiteru was an unknown trespasser, and there is no allegation or evidence that WMATA engaged in intentional, willful, or wanton misconduct. Additionally, as a trespasser, Whiteru's contributory negligence bars recovery.

This Court should affirm.

3

## STATEMENT OF THE CASE

### A.    Factual Background

The district court described the pertinent undisputed facts as follows:

> In the morning hours of October 19, 2013, Whiteru stumbled into the Judiciary Square station *** in Washington while extremely intoxicated.  At around 1:15 a.m., surveillance footage shows [Whiteru] on the station platform adjacent to the parapet wall, which is about three feet high and runs along the rear of the platform.  While drunkenly attempting to lean or sit on the parapet wall, Whiteru fell backwards over the wall and landed in a trough that houses lighting and electrical equipment.  As the trough sits at least four feet below the platform, his fall was at least seven feet.  His body was discovered four days later. ***  Although no one knows precisely when he died, both sides agree that Whiteru would have survived had he been discovered at 1:30 a.m.

JA 795 (citations omitted).

### B.    Procedural History

1.  Plaintiffs sued WMATA in the Superior Court of the District of Columbia for premises liability (alleging negligent failure to keep the "Metro Station property and subway platform safe") as well as for negligence, survival, and wrongful death (alleging negligent conduct by WMATA employees), all under D.C. law.  ECF 1-1, ¶ 23.  After WMATA removed the case to the U.S. District Court for the District of Columbia, the district court (Jackson, J.) dismissed Plaintiffs' premises liability claim.  ECF 13.  Plaintiffs abandoned that claim in their amended complaint, leaving only the claims alleging negligent conduct.  JA 22-26.  After denying an earlier summary judgment motion, the district court granted WMATA's supplemental

motion for summary judgment on those claims. JA 723. The court reasoned that a passenger's contributory negligence is a "complete defense," and that Whiteru was contributorily negligent as a matter of law. JA 732.

This Court reversed based on a contrary interpretation of D.C. law with respect to "common carriers and passengers." *Whiteru v. WMATA*, 25 F.4th 1053, 1058 (D.C. Cir. 2022). Specifically, this Court held that D.C. law "has explicitly adopted Section 314A of the Restatement," which discusses a common carrier's liability for failing to aid a passenger who negligently injured himself, and thus includes a corresponding "exception" to the "contributory negligence defense." *Id.* at 1058-1059.

2. On remand, the district court (Boasberg, J.) granted WMATA leave to file another motion for summary judgment. JA 796. WMATA argued "that Whiteru cannot recover because he became a trespasser when he entered the trough area" upon falling. *Id.*[1]

---

[1] Although Plaintiffs deride the district court for granting WMATA leave to file its (meritorious) motion for summary judgment, they do not challenge that decision. *See* Br. ii, 8-9. For good reason: The court had "considerable equitable discretion" to grant WMATA leave to file the motion under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, *see, e.g.*, *Whiteru v. WMATA*, No. 15-cv-0844 (KBJ), 2018 WL 6605427, at *1 (D.D.C. Dec. 17, 2018), and properly determined that every pertinent factor supported granting leave, *see* ECF 103.

5

While "in no way minimiz[ing] the fact that Whiteru's death was a tragedy," the district court granted WMATA's motion for summary judgment. JA 807. The parties did "not dispute" that (i) "Whiteru was a passenger while on the station platform before his fall," (ii) "the area behind the parapet wall is not typically held open to Metro passengers," and (iii) "the relevant injury *** is the exacerbation of the initial wounds Whiteru sustained when he fell behind the parapet wall," *i.e.*, in Plaintiffs' own words, "[i]t is the fall's aftermath that matters." JA 799 (quoting ECF 62 (Pls.' Reply in Support of Mot. in Limine)). Applying Section 329 of the Second Restatement, as incorporated by D.C. law, the district court found that Whiteru became a trespasser when he "fell into an area to which passengers were not invited." JA 800. Therefore, the court held, WMATA had no "duty to aid" Whiteru after his fall. *Id.* Plaintiffs did not allege that WMATA had breached the "lesser dut[y] it owes to trespassers," *i.e.*, that WMATA engaged in intentional, willful, or wanton conduct. JA 804. Given his trespasser status, moreover, Whiteru's "contributory negligence would still bar recovery." *Id.* There was "no basis" in D.C. law to "extend" this Court's prior ruling, the district court concluded, to a scenario where "the plaintiff is a trespasser." JA 806.

## SUMMARY OF ARGUMENT

The district court properly granted WMATA's motion for summary judgment in light of Whiteru's trespasser status.

D.C. case law is clear:  Landowners, including common carriers, owe trespassers a lesser duty of care—merely a duty not to engage in intentional, willful, or wanton misconduct.  Plaintiffs' argument that the D.C. Court of Appeals has "retreated" from the distinct duty of care owed to trespassers is demonstrably incorrect.  Under D.C. law, when a passenger enters an area without a common carrier's consent or acquiescence, the passenger becomes a trespasser.  That is so regardless of whether the restricted area is within or adjacent to a broader area where the passenger was lawfully present (*e.g.*, a subway station or platform), or how the trespasser entered the restricted area (*e.g.*, unintentionally).  Under the lesser standard of care for trespassers, there is no duty for a common carrier to discover and aid an *unknown* trespasser, even if the trespasser's presence was "foreseeable."

The district court correctly held that Section 329 of the Second Restatement controls this case.  D.C. law incorporates and reflects two potentially relevant sections of the Restatement: 314A and 329.  But Section 314A does not discuss trespassers, as they are defined in Section 329.  Even if it did, the illustrative example in Section 314A (upon which Plaintiffs rely) addresses when a railroad knows but ignores that a passenger fell from a train and injured himself.  At most, that

7

illustration supports an (inapplicable) duty to aid a known trespasser. By contrast, Section 329 applies directly to this case. It provides that when a passenger falls into a restricted area within a train station, he becomes a trespasser, and the railroad owes him only the lesser duty of care applicable to trespassers. D.C. law's well established distinction between passengers and trespassers resolves any superficial tension between Sections 314A and 329.

Plaintiffs muddle that critical distinction, which has governed liability to trespassers under D.C. law for decades. In doing so, Plaintiffs seek an unauthorized departure from D.C. law, based largely on cases from other jurisdictions and law review articles. But even those sources do not support the dubious policy argument that a common carrier should have a duty to discover and aid an unknown trespasser. This Court's duty is to predict how the D.C. Court of Appeals would rule, not to fashion tort policy. That prediction is straightforward: D.C. case law forecloses holding a common carrier liable for failing to timely discover and aid an unknown trespasser absent any alleged intentional, willful, or wanton misconduct.

Without a plausible theory of liability, Plaintiffs half-heartedly argue that this Court *already* held that WMATA had such a duty to Whiteru despite his trespasser status. But in its prior opinion, this Court did not say anything about trespassers, let alone radically depart from longstanding D.C. tort principles *sua sponte* and *sub*

*silentio*.  That is entirely unsurprising:  the question here, raised in a new summary judgment motion on remand, was not presented the last time around.

Applying established D.C. precedents, the district court correctly determined that WMATA was entitled to summary judgment.  There are no disputed facts bearing on Whiteru's trespasser status because Plaintiffs acknowledged below that Whiteru fell into an area that was not held open to passengers.  There was no basis to argue otherwise, because no reasonable person could believe that WMATA consented to passengers entering the 53-inch wide trough area—behind a three-foot wall, at least four feet below the platform, housing lighting and electrical equipment—where Whiteru fell.  Accordingly, Plaintiffs may recover only for intentional, wanton, or willful conduct.  But they allege nothing (nor have any evidence) of the sort.

Alternatively, even if WMATA's mere negligence could constitute a breach despite Whiteru's trespasser status, Whiteru's undisputed contributory negligence would bar recovery.  The exception to the contributory negligence defense that this Court identified in Section 314A applies only to passengers, not trespassers.  Whiteru's death was a tragedy, but not one for which WMATA can be held liable.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party.  *See Oviedo v.*

*WMATA*, 948 F.3d 386, 392 (D.C. Cir. 2020).  "Rule 56(a) requires a court to 'grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Id.* (quoting FED. R. CIV. P. 56(a)).

"Because it is undisputed that D.C. tort law controls the disposition of this case, the duty of this court 'is to achieve the same outcome [that] would result if the District of Columbia Court of Appeals considered this case.'"  *Briggs v. WMATA*, 481 F.3d 839, 843 (D.C. Cir. 2007) (alteration in original) (quoting *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006)).  D.C. Court of Appeals decisions, along with this Court's decisions "rendered prior to February 1, 1971, *** constitute the case law of the District of Columbia."  *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971).[2]

## ARGUMENT

### I.    A PASSENGER INJURED AFTER ENTERING A RESTRICTED AREA CAN RECOVER ONLY FOR INTENTIONAL, WILLFUL, OR WANTON MISCONDUCT

#### A.    D.C. Law Distinguishes Trespassers From Other Injured Persons

Seventy years ago, this Court's decision in *Firfer v. United States* established that "[t]he duty owed and the degree of care required to be exercised by [a]

---

[2] The District of Columbia Court Reform and Criminal Procedure Act of 1970 became effective on February 1, 1971.  *See M.A.P.*, 285 A.2d at 312.

landowner *** depend upon the status of the injured person at the time of the accident." 208 F.2d 524, 527 (D.C. Cir. 1953). As relevant here, a trespasser "may recover only for intentional, wanton, or willful injury." *Id.* at 528.[3]

That rule continues to govern liability to injured trespassers in D.C. After the D.C. Court of Appeals "became the highest court of the District of Columbia" in February 1971, *M.A.P.*, 285 A.2d at 312, this Court initially attempted to deviate from *Firfer*'s distinction between trespassers and other entrants on land, invoking the purported "modern trend" that "[a] landowner must act as a reasonable man" regardless of "the status of the entrant." *Smith v. Arbaugh's Rest., Inc.*, 469 F.2d 97, 100 (D.C. Cir. 1972); *see also Gould v. DeBeve*, 330 F.2d 826, 829-830 & n.5 (D.C. Cir. 1964) (declining to apply *Firfer*'s distinct standard of care for trespassers due to "markedly different *** facts," but approving a jury instruction requiring "wil[l]ful or wanton misconduct"); *Daisey v. Colonial Parking, Inc.*, 331 F.2d 777, 779 (D.C. Cir. 1963) ("[D]iscrete classifications are being replaced by a logical continuum equivalent to the ordinar[y] rule of negligence requiring due care under

---

[3] A trespasser may also recover for "the maintenance of a hidden engine of destruction." *Firfer*, 208 F.2d at 528. But that sort of conduct is not at issue here. *See Toomer v. William C. Smith & Co.*, 112 A.3d 324, 326, 328 (D.C. 2015) ("liability for maintenance of a hidden engine of destruction *** requires willful and wicked intent—that is, intent to harm trespassers with a hidden device," like "traps and spring guns" (internal quotation marks omitted)).

all the circumstances.").  Plaintiffs desire the same deviation.  *See* Br. 20, 31 (relying on *Gould*, *Arbaugh's*, and *Daisey*).

But the D.C. Court of Appeals—in an en banc opinion—rejected *Arbaugh's* and reaffirmed that *Firfer* "continues to represent the general rule of landowner liability to trespassers in this jurisdiction."  *Holland v. Baltimore & Ohio R.R. Co.*, 431 A.2d 597, 599 (D.C. 1981) (en banc).  Although there "ha[d] been some movement here, and in other jurisdictions, in the direction of abolishing the distinctions between *invitee* and *licensee* plaintiffs on the question of the duty of care owed them by landowners[,]" *Holland* clarified that "the *trespasser* classification" remained in force because the D.C. Court of Appeals found no "compelling reason to abandon *Firfer*."  *Id.* at 599, 601 (emphases added).[4]

Since *Holland* clarified D.C. law, the D.C. Court of Appeals has consistently applied the distinct standard of care for trespassers.  *See, e.g.*, *Toomer*, 112 A.3d at 326; *Lacy*, 684 A.2d at 394; *WMATA v. Ward*, 433 A.2d 1072, 1074 (D.C. 1981).  Plaintiffs' statements to the contrary are wrong.  For example, although they quote a district court decision stating that the D.C. Court of Appeals no longer "clings to the *Firfer* rule," Br. 42 (quoting *Foshee v. Consolidated Rail Corp.*, 661 F. Supp.

---

[4] Unlike the standard of care for trespassers, "[t]he distinct standards of care for licensees and invitees under the common law no longer exist in this jurisdiction." *Lacy v. Sutton Place Condo. Ass'n*, 684 A.2d 390, 393 n.2 (D.C. 1996).

350, 353 (D.D.C. 1987)), Plaintiffs fail to mention that this Court went out of its way to "vacate" that portion of the lower court's opinion precisely because "the D.C. Court of Appeals' decision in *Holland* *** definitely reembraced the rule laid down in *Firfer*," *Foshee v. Consolidated Rail Corp.*, 849 F.2d 657, 658 n.2 (D.C. Cir. 1988).[5]

There is no longer any question that, under D.C. law, determining a landowner's duty of care requires determining whether the injured party was a trespasser.

## B.    A Passenger Who Enters An Off-Limits Area In A Train Station Becomes A Trespasser

A "trespasser" is a "person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *Firfer*, 208 F.2d at 528 (quoting RESTATEMENT (FIRST) OF TORTS, § 329 (1934)).  Such restricted spaces can include areas *within* broader settings open to the public:  If the person "left that portion of the [space] which is set aside for the public, he exceeded the scope of his license and became a trespasser[.]" *Id.* at 529.  That

---

[5] Nor is it true that "many jurisdictions" have "retreated" from the trespasser rule that the D.C. Court of Appeals follows.  Br. 41.  Plaintiffs' own authority observed that "a majority of courts have retained the traditional rule structures governing the duties owed to trespassers," while "only a minority [of jurisdictions] have adopted a unitary standard of reasonable care."  James A. Henderson, Jr., *The Status of Trespassers on Land*, 44 WAKE FOREST L. REV. 1071, 1073 (2009).

occurs when it is "apparent to any reasonable person that the [landowner], had it intended the [area] to be used by the public, would have maintained a more comfortable and convenient method of ingress and egress." *Id.* at 528.  There need not be express "warning signals" that the area is restricted when "natural and artificial obstacles to *** entry" serve as "warning enough in themselves." *Id.* at 528-529.  For example, when a visitor to the Jefferson Memorial entered a "grassy plot" that "was inaccessible to the public in any normal and ordinary manner," he became "a trespasser." *Id.* at 528.

Contrary to Plaintiffs' argument, these principles apply equally in WMATA Metro stations.  It is undisputed that common carriers have "special relationships" with, and thus owe heightened duties to, their passengers.  Br. 12 (internal quotation marks omitted).  Plaintiffs rely on cases holding that "*prospective* passengers [a]re not *yet* in a special relationship with WMATA" to argue that once a person has "placed himself" on WMATA property, a special relationship *attaches*.  Br. 24-25 (second emphasis added) (citing *McKethean v. WMATA*, 588 A.2d 708, 712 (D.C. 1991); *Briggs*, 481 F.3d at 845; *Chvala v. D.C. Transit Sys., Inc.*, 306 F.2d 778 (D.C. Cir. 1962)).  But that special relationship exists only if the person is not trespassing: An unbroken line of cases holds that "fare-paying customers in a subway station *become* trespassers when they leave the platform and enter the tracks," *i.e.*, a restricted area.  *Hines v. WMATA*, No. 21-cv-679 (DLF), 2022 WL 392306, at *5

14

(D.D.C. Feb. 9, 2022) (emphasis added); *see also Coulston v. WMATA*, No. 19-2060 (TJK), 2020 WL 1236563, at *3 (D.D.C. March 13, 2020) (same); *Johnson v. WMATA*, 764 F. Supp. 1568, 1572 (D.D.C. 1991) (same); *Whitaker v. WMATA*, No. 82-cv-2771, 1984 U.S. DIST. LEXIS 16712, at *12, *14 (D.D.C. May 14, 1984) (same); *cf. Ward*, 433 A.2d at 1073 (WMATA employee's mother, lawfully in bus station to deliver clothes, was a trespasser if the area where she slipped was not held open to her). Such a passenger is "entitled to be on the train platform," but when the passenger enters "a place where the public [i]s not invited," even if "no warning signs [a]re posted," the passenger becomes a trespasser because he "exceed[s] the scope of his status." *Whitaker*, 1984 U.S. Dist. LEXIS 16712, at *10, *12, *14; *see also Firfer*, 208 F.2d at 529 ("[H]e exceeded the scope of his license and became a trespasser[.]").

That trespasser definition, moreover, "applies regardless of how the person entered the premises (accidentally, intentionally, or inadvertently), or why the person remained on the property." *Copeland v. Baltimore & Ohio R.R. Co.*, 416 A.2d 1, 3 (D.C. 1980); *see also Whitaker*, 1984 U.S. Dist. LEXIS 16712, at *17-*18 ("[T]he case law in the District of Columbia, makes clear that *** [t]he deciding factor is the actual presence on property of another without the privilege to be there."). For example, a man was a trespasser even though he "had been placed on [train] tracks by one or more unknown persons" while he was "semiconscious."

15

*Copeland*, 416 A.2d at 2. Similarly, an "elderly" woman who suffered from "brain atrophy with senile changes" was "considered a trespasser" when she wandered from a station platform onto train tracks. *Hines*, 2022 WL 392306, at *1, *5.

Plaintiffs suggest this rule is unfair. *See* Br. 32 (arguing trespasser status "should not depend on the happenstance of whether [a person] falls forward or backward"). Br. 32. But landowners are "entitled to assume" that people will "not trespass" in a restricted area. *E.g.*, *United Zinc. & Chem. Co. v. Britt*, 258 U.S. 268, 275 (1922). Such policy arguments cannot trump D.C. law regardless. Many D.C. cases concerning trespasses on railroad property involve persons who were accidental trespassers in some sense (*e.g.*, incapacitated, intoxicated, or ill)—yet the same trespasser rule applies. *E.g.*, *Copeland*, 416 A.2d at 2-3; *Hines*, 2022 WL 392306, at *1, *5.[6]

---

[6] Largely ignoring these cases, Plaintiffs argue that this Court's decision in *Belton v. WMATA* carved out an exception to the trespasser rule in the "public transit" context. Br. 34 (citing 20 F.3d 1197, 1202 (D.C. Cir. 1994)). But the cited portion of *Belton* held only that by "resting his frame against the outside of [a] bus," a non-passenger on a public street did not become a trespasser in the relevant sense, based on "ordinary rules relating to use of the public way." 20 F.3d at 1202. The plaintiff had not "actually occupied" a restricted area. *Id.*

### C.    Trespassers May Recover Only For Intentional, Willful, Or Wanton Conduct

*1.    Breach of the duty to trespassers requires extreme misconduct.*

"[T]o rise to the level of willfulness or wantonness, the activity must be undertaken with 'reckless disregard' for the lives of others," and "it must be foreseeable to a reasonable person that the conduct will result in harm." *Whitaker*, 1984 U.S. Dist. LEXIS 16712, at *31 (quoting *Copeland*, 416 A.2d at 4); *see also Copeland*, 416 A.2d at 3-4 (The word "'wanton' means characterized by extreme recklessness and an utter disregard for the rights of others." (quoting *Safeway Trails, Inc. v. Schmidt*, 225 A.2d 317, 320 (D.C. 1967))).  For example, "operat[ing] the train while under the influence of cocaine" is the sort of extreme misconduct that may qualify as "wanton" because it demonstrates "reckless disregard to the safety of others" and predictably "endanger[s]" them. *Johnson*, 764 F. Supp. at 1574.  By contrast, alleging that a defendant was "negligent in failing to act in a reasonably competent manner" is not enough.  *Coulston*, 2020 WL 1236563, at *3; *see also Toomer*, 112 A.3d at 327 n.4 (contrasting alleged "negligence" with "intentional, wanton [or] willful" conduct).

*2.    A common carrier's failure to timely discover and aid an unknown trespasser is not a breach of the duty of care.*

Seeking to avoid a bar it cannot meet, Plaintiffs' argument draws upon (inapt) statements alluding to a possible duty to exercise "ordinary care" to a *known* trespasser.  As a threshold matter, D.C. law does not recognize such an exception.

17

*See, e.g.*, *Estrada v. Potomac Elec. Power Co*., 488 A.2d 1359, 1360 n.1 (D.C. 1985) (the duty to "abstain from *willful or wanton conduct* does not arise unless the owner has actual, rather than merely constructive, knowledge of the trespasser's presence on the property and is cognizant that he is in danger of immediate rather than merely possible harm" (emphasis added)).  This Court need not resolve that issue, however, because it is undisputed that Whiteru was an *unknown* trespasser.

Assuming *arguendo* it exists, any duty to aid (or at least "not to injure") known trespassers applies only if the "*specific*" trespasser is "already discovered." *Belton*, 20 F.3d at 1202.  At times, Plaintiffs appear to acknowledge as much.  *See, e.g.*, Br. 27 (describing "defendant's *knowledge* of [a trespasser's] need for aid" as "controlling" (emphasis added)).  But elsewhere, Plaintiffs attempt to extend such a duty to scenarios where a defendant "should have known" of the trespasser in a broad sense—meaning when the trespasser was "foreseeable."  Br. 28-31, 36.

D.C. case law forecloses that approach.  As the en banc D.C. Court of Appeals has explained, "the general rule" for trespassers "applies in a given case unless and until an exception can be shown to be applicable," and any such exception must be construed "strictly" to apply "only when all *** elements of the [exception] are satisfied." *Holland*, 431 A.2d at 601-602 (refusing to apply the "attractive-nuisance" exception for child trespassers when a single "element *** of the formulation cannot be satisfied").  Any exception for "known" trespassers obviously cannot apply "prior

18

to discovery of the trespasser." *Belton*, 20 F.3d at 1202; *see also Hines*, 2022 WL 392306, at *5 (rejecting application of "known trespasser" rule because "[t]he complaint fail[ed] to allege *who* observed [the trespasser] on the tracks" and thus did not allege that WMATA knew of the trespasser's presence).[7]  Indeed, the D.C. Court of Appeals has emphasized that "a railroad owes an *undiscovered* trespasser" the standard "duty to refrain from willfully or wantonly injuring him[.]" *Copeland*, 416 A.2d at 3 (emphasis added); *see also Johnson*, 764 F. Supp. at 1573 ("[I]f a landowner is *unaware* of the presence of the trespasser, the landowner is wanton only if he or she acts with reckless disregard for the safety of others.").

For the same reason, Plaintiffs' references to foreseeability invoke a "standard *** [that] has not been adopted in this jurisdiction." *Lacy*, 684 A.2d at 394 (citing *Holland*, 431 A.2d at 601).  Under D.C. law, the general concept of foreseeability may bear on different questions—namely, whether the defendant *breached* the duty of care by engaging in "willful or wanton conduct," which (among other requirements) must "result in harm" that is "foreseeable." *Copeland*, 416 A.2d at 3-

---

[7] Plaintiffs argue that *Hines* "found that the plaintiff's failure-to-warn claim could survive if WMATA negligently monitored the station." Br. 48. But Plaintiffs do not press a "failure-to-warn" claim (or anything else concerning the cause of Whiteru's fall).  And the cited snippet from *Hines* held only that sovereign immunity did not bar a claim concerning WMATA's alleged failure to monitor the station. *See* 2022 WL 392306, at *4.  Nothing in *Hines* suggests that mere negligence can constitute a breach of the duty owed to trespassers, let alone unknown trespassers.

4 (harm was not "foreseeable" because "there was no reason to anticipate human activity of any sort" in the particular area); *see also Johnson*, 764 F. Supp. at 1574 ("if Dixon operated the train while under the influence of cocaine, his conduct was wanton" because it is "foreseeable that patrons will wind up on WMATA tracks" and "[u]se of cocaine *** impairs an operator's reactions"); *cf. WMATA v. O'Neill*, 633 A.2d 834, 840 (D.C. 1993) (common carrier "has a duty to protect its passengers from foreseeable harm arising from criminal conduct of others"). But whether a trespasser's presence was foreseeable alone does not affect the duty of care. *See, e.g.*, *Johnson*, 764 F. Supp. at 1572, 1574.

Rejecting a heightened duty of care to foreseeable trespassers is not unique to D.C. law. As Plaintiffs' own treatise explains, "foreseeability of a trespasser is not enough; the landowner must know or have reason to know that [the trespasser] is *actually present*." Dan B. Dobbs et al., DOBBS' LAW OF TORTS § 273 (July 2022 Update) (emphasis added). For these (and related) purposes, the phrase "[h]ave reason to know" thus does "not mean foreseeability," but rather "specific knowledge that leads to the inference that the trespasser is actually present." *Id.*; *see also id.* at n.33 ("This is definitely not the same as recognizing a risk or probability that the fact exists." (citing RESTATEMENT (SECOND) OF TORTS § 12 (1965)). For example, this Court has indicated that a common carrier could not disclaim knowledge of a trespasser after passengers alerted employees to the "specific" trespasser's presence.

20

*Belton*, 20 F.3d at 1202 (emphasis omitted). But a mere "possibility of trespassers is not enough to nullify the special rule on trespassers." *Id.*

Plaintiffs attempt to circumvent these established principles by relying on cases which do not apply the correct D.C. law on trespass and which pre-date the D.C. Court of Appeals' reaffirmation of the trespass rule. Br. 30-31 (citing *Luck v. Baltimore & Ohio R.R. Co.*, 510 F.2d 663, 667 (D.C. Cir. 1974) (applying *Arbaugh's* before it was overruled); *Daisey*, 331 F.2d at 777, 779 (rejecting "discrete classification[]" for trespassers)). In any event, *Luck* recognized a duty to foreseeable *child* trespassers while "intimat[ing] no view as to the railroad's duty had the trespasser *** been an adult." 510 F.2d at 667 n.5; *see also Holland*, 431 A.2d at 602 (abrogating *Luck* by refusing to expand "attractive nuisance" doctrine to certain foreseeable child trespassers). And *Daisey*'s discussion of foreseeability revealed that the plaintiff was not a trespasser at all: Her presence was "not only reasonably foreseeable, but reasonably expected" because she had entered an area "used by the public indiscriminately." 331 F.2d at 779, 780. A "reasonable person" could thus "believ[e] that there was consent to the entry of the *** public generally onto [the] property" based on the landowner's "sufferance or acquiescence." *Id.* at 779 (ellipsis in original) (internal quotation marks omitted); *see also Boyrie v. E & G Prop. Servs.*, 58 A.3d 475, 478 (D.C. 2013) (*Daisey* applies when "the undisputed facts do *not* establish as a matter of law that [the plaintiff] was a trespasser"

(emphasis added)); *Whitaker*, 1984 U.S. Dist. LEXIS 16712, at *14 (*Daisey* is inapplicable when "there is no justification for a reasonable person to believe that defendant would consent to *** entry").

Plaintiffs' arguments only reinforce that foreseeability of a trespasser's presence has no bearing on the duty owed to that trespasser. Plaintiffs' attempt (Br. 30) to distinguish the many cases involving trespassers on train tracks as involving *un*foreseeable trespassers fails. It is reasonably "foreseeable that patrons will wind up on WMATA tracks," as the case law unfortunately reflects. *E.g., Johnson*, 764 F. Supp. at 1574. Yet in those cases, the trespasser rule still applies. *See* pp. 14-16, *supra.* Neither law nor logic supports a different result here.

Similarly, Plaintiffs invert basic tort principles by arguing that cases involving "a duty to prevent 'original' injuries'" to trespassers are irrelevant because they do not address a duty to "aid" a person who is "already-injured." Br. 27. Plaintiffs cannot explain why a defendant who lacks the *lesser* duty to avoid injuring an unknown trespasser would have the *greater* duty to aid an unknown trespasser. Plaintiffs' own sources suggest the opposite. *See* Ernest J. Weinrib, *The Case for a Duty to Rescue*, 90 YALE L.J. 247, 247, 251 (1980) (the "general rule" that there is no "duty to rescue *** rests on the law's distinction between the infliction of harm and the failure to prevent it"); Harold F. McNiece & John V. Thornton, *Affirmative Duties in Tort*, 58 YALE L.J. 1272, 1272-1273 (1949) ("The range of human conduct

theoretically susceptible to tort consequences runs from the zenith of clearly affirmative misconduct (misfeasance) to the nadir of clear inaction (nonfeasance)[.]").

Finally, Plaintiffs argue based on *WMATA v. Jeanty* that WMATA has a duty to "inspect its premises for members of the public," and a resulting duty to discover even unknown trespassers.  Br. 40 (citing 718 A.2d 172, 178 (D.C. 1998)).  That case, however, had nothing to do with inspecting a station for members of the public, let alone trespassers.  It addressed an alleged failure to inspect "equipment"— namely, a bus door that "ejected" a passenger. *Jeanty*, 718 A.2d at 173, 178.  Neither *Jeanty* nor any other D.C. case imposes a novel duty to discover unknown trespassers (which would swallow the trespass rule).[8]

### D.    The Restatement Confirms The Lesser Duty For Passengers-Turned-Trespassers

> *1.    Section 329 of the Second Restatement reinforces the trespasser rules articulated in D.C. law.*

Plaintiffs do not dispute that D.C. law incorporates Section 329 of the Second Restatement.  That section reinforces the voluminous D.C. case law discussed above.

---

[8] Plaintiffs appear to invoke principles of "premises liability" by suggesting in their Statement of Issues (but not their actual argument) that the trough area was not "adequately secured" and noting that a common carrier may be "liable to a non-passenger plaintiff because it was neglectful in maintaining its property."  Br. 2, 20, 45 (citing *Chvala*, 306 F.2d at 781).  But their operative complaint omits their (previously dismissed) premises liability claim. *See* p. 4, *supra*.

As the district court explained, an illustration that accompanies Section 329 "essentially describes this case"—

> Without any negligence on his part A, standing on the platform of a subway station of the X Company, slips and falls onto the tracks. While there he is run over by the train of X Company, and injured. A is a trespasser, and the liability to him is determined by the rules stated in §§ 333 and 336, notwithstanding the accidental character of his intrusion.

JA 800 (quoting RESTATEMENT (SECOND) OF TORTS § 329, cmt. c, illus. 1). Section 329 confirms that a passenger in a train station becomes a trespasser by entering an area that is not held open to such passengers, even if accidentally. In those circumstances, the common carrier may be liable only for a breach of the lesser duty owed to trespassers. *See* RESTATEMENT (SECOND) OF TORTS §§ 333, 336 (setting forth standard of care for trespassers, including under the "known trespasser" rule).

Plaintiffs seek to avoid that result by arguing that the Section 329 illustration mischaracterizes the underlying Pennsylvania case. *See* Br. 27 (arguing that the plaintiff in *Frederick v. Philadelphia Rapid Transit Co.*, 10 A.2d 576, 578 (Pa. 1940), "was not a trespasser" because he did not "voluntarily" enter the tracks). But D.C. law incorporates the Restatement, not every word in the cases it cites, and both D.C. law and the Restatement clearly reject a voluntariness requirement for trespassers. *See Copeland*, 416 A.2d at 3; RESTATEMENT (SECOND) OF TORTS § 329 ("[T]he status of an accidental trespasser is still that of a trespasser."). Ultimately, *Frederick*'s comment that the plaintiff was not a trespasser made no difference to

24

the court's analysis, which held that the railroad's "obligation toward [the plaintiff] was no greater than if he *were* a trespasser," and thus examined whether the railroad breached its duty to avoid "wil[l]ful or wanton" conduct. *Frederick*, 10 A.2d at 578 (emphasis added).

### 2.    *Section 314A of the Second Restatement is inapplicable.*

Plaintiffs seek to overcome Section 329 by pointing to Section 314A, which provides that a common carrier has a special "duty to its passengers." Br. 12-13 (quoting RESTATEMENT (SECOND) OF TORTS § 314A(1)). As relevant here, that includes a duty to aid "its passengers *** after it knows or has reason to know that they are *** injured." RESTATEMENT (SECOND) OF TORTS § 314A(1). Plaintiffs argue that Section 314A is an exception that "take[s] the case out of the general rule" for trespassers. Br. 13 (alteration in original) (emphasis omitted). But again, such an "exception" can apply only when all of its "elements *** are satisfied." *Holland*, 431 A.2d at 601-602.

Although this Court held that Section 314A is an exception to D.C.'s contributory negligence rule, Section 314A is not—and cannot logically be—an exception to D.C.'s trespasser rule. To be sure, "no rule is better established than that which holds a common carrier to the highest degree of care towards its passengers for hire." *Jeanty*, 718 A.2d at 175. But that "duty arises *** only in a carrier-passenger relationship. A common carrier has no special duty to non-

passengers." *McKethean*, 588 A.2d at 712 (citing RESTATEMENT (SECOND) OF

TORTS, § 314A, cmt. c (Section 314A "appl[ies] only where the relation exists

between the parties, and the risk of harm *** arises in the course of that relation. A

carrier is under no duty to one who has *** ceased to be a passenger[.]")); *see also*

*Briggs*, 481 F.3d at 845 (when a person has "ceased to be a passenger," the duty

owed to passengers does not apply). A trespasser, by definition, "exceed[s] the

scope of his status as a fare-paying passenger." *Whitaker*, 1984 Dist. LEXIS 16712,

at *12, *14; *see also Firfer*, 208 F.2d at 529 (trespasser "exceeded the scope of his

license"); pp. 14-15, *supra*. Accordingly, Section 314A's reference to a common

carrier that "has reason to know" of an injured "passenger" cannot extend to

trespassers, let alone unknown trespassers. *See also* p. 20, *supra* (clarifying narrow

meaning of "reason to know" in this context).

For the same reason, the Section 314A illustration on which Plaintiffs

primarily rely is inapplicable. The illustration states that if a "passenger ***

negligently falls off the train, and is injured," and "[t]he train crew discover that he

has fallen off, but do nothing, *** as a result of which his original injuries are

seriously aggravated," the "Railroad is subject to liability[.]" RESTATEMENT

(SECOND) OF TORTS § 314A cmt. d, illus. 1 (citing *Yazoo & M.V.R. Co. v. Byrd*, 42

So. 286 (Miss. 1906)). That does not bear on WMATA's duty here for at least three

reasons.

*First*, neither the illustration nor the underlying *Yazoo* decision mentions, let alone discusses, whether the injured passenger had become a trespasser by falling off a moving train and laying "alongside of the track."  *Yazoo*, 42 So. at 287; *see* JA 802-804.  Even assuming that the passenger was a trespasser while the railroad failed to aid him, Plaintiffs' argument that Section 314A's "silence on trespasser-status is instructive" (Br. 17) ignores Section 329's *lack of silence* on trespasser-status.  As the more specific rule, Section 329 controls.  *Cf. Brown v. Consolidated Rail Corp.*, 717 A.2d 309, 313 (D.C. 1998) ("[A] specific statute will not be controlled or nullified by a general one" (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976)).  The district court thus correctly held that Section 329 governs "*whether* passenger or trespass duties apply" in the first place, while Section 314A pertains to "the nature of the duties a common carrier owes its passengers *when those duties apply*."  JA 802-803.

*Second*, even if the illustration in Section 314A could be read to impose implicitly a duty as to certain trespassers, that duty would apply only to *known* trespassers—*i.e.*, where a common carrier "discover[s]" the injured trespasser "but do[es] nothing" and thus "aggravate[s] *** his injuries."  RESTATEMENT (SECOND) OF TORTS § 314A cmt. d, illus. 1; *see also Yazoo*, 42 So. at 287 ("The passengers on board *** immediately made known this fact to the conductor, and asked that the train be stopped," but "[t]he conductor refused," and the passenger "was left to lie

alongside of the track *** without any attention, in midsummer, for three hours or more"); Pls' Br. 23 ("The carrier was liable because it *knew* the passenger had fallen there[.]" (emphasis added)).  It cannot be read to support a duty to discover and aid an *unknown* trespasser.

*Third*, the district court's reading reconciles Section 314A with the many D.C. cases holding that a common carrier has no special duty to an unknown trespasser. On Plaintiffs' reading, every D.C. case concerning passengers who entered restricted areas in train stations should implicate Section 314A's heightened duty of care—but none discusses such a duty as to those trespassers.

> ### 3.    Neither this Court's decision in the prior appeal nor decisions from other jurisdictions support applying Section 314A here.

Plaintiffs argue (in passing) that this Court imposed a duty to discover and aid an unknown trespasser when this case was previously on appeal.  *See* Br. 35-36. That argument is frivolous.  This Court's opinion did not mention trespassers, let alone endorse the novel rule that Plaintiffs propose.  Plaintiffs argue that it was "apparent where Mr. Whiteru's death occurred," Br. 35, but that does not mean this Court issued a "holding[] in hiding" regarding WMATA's duty to Whiteru *as a trespasser*. *Wilkins v. United States*, 143 S. Ct. 870, 880 (2023).

Indeed, that question was not even presented.  Although Plaintiffs claim (Br. 35) that WMATA's prior briefing to this Court referenced Whiteru's trespass, WMATA's argument was about whether "the continuing proximate effects of

28

Whiteru's contributory negligence would bar a claim under the 'Good Samaritan' doctrine," not the lesser duty owed to trespassers. *See* Br. of Appellee 35, *Whiteru v. WMATA*, No. 20-7087 (D.C. Cir. Mar. 26, 2021), ECF No. 1891917. Plaintiffs assume that this Court "*sua sponte* and *sub silentio* raised, considered, and rejected an argument" regarding the lesser duty owed to trespassers. *Wilkins*, 143 S. Ct. at 879. That can't be right—particularly when rejecting WMATA's argument requires departing from controlling D.C. law.

Plaintiffs seek such a departure, as evidenced by their reliance on decisions from other jurisdictions. But even those decisions do not support a duty to aid an unknown trespasser. For example, Plaintiffs rely heavily on *Winfrey v. GGP Ala Moana LLC*, 308 P.3d 891 (Haw. 2013). But unlike the D.C. Court of Appeals, Hawaii does not recognize "distinctions" based "upon the status of the injured party as a trespasser[.]" *Id.* at 904 (quotation omitted). And the injured party in *Winfrey*— as in Plaintiffs' other cited cases—was known to the landowner. *See id.* at 895-897 (trespasser was discovered unharmed before falling into ventilation duct and was known to be in ventilation duct when harm occurred); *Pridgen v. Boston Hous. Auth.*, 308 N.E.2d 467, 475-476 (Mass. 1974) (discussing duty once defendant "became aware" that trespasser was trapped in an elevator shaft); *Continental S. Lines, Inc. v. Robertson*, 133 So. 2d 543, 545 (Miss. 1961) (discussing duty "[w]hen the carrier knows of the helpless or practically helpless condition of the passenger at

the end of the journey"); *Frederick*, 10 A.2d at 578 (discussing duty "when the owner or operator is put on guard as to the presence of the trespasser"); *see also Callaway v. Scrivner, Inc.*, No. CIV. A. 90C-AP1, 1991 WL 113437, at *1-*3 (Del. Super. Ct. June 12, 1991) (defendants knew plaintiff, a customer in a store area held open to customers, had been injured).  More importantly, these decisions do not address and cannot displace established D.C. law.[9]

The dearth of supporting authority for Plaintiffs' position indicates that it is not only foreclosed under D.C. law, but also extreme as a general matter.  Even assuming *arguendo* a heightened duty owed to known trespassers, because Whiteru was an "undiscovered" trespasser, WMATA had a duty only to avoid intentional, willful, or wanton misconduct.  *E.g.*, *Copeland*, 416 A.2d at 3.

## II.   WMATA DID NOT BREACH ITS DUTY TO WHITERU

### A.   Whiteru Became A Trespasser When He Fell Into The Trough Area That Is Not Held Open To Passengers

The undisputed facts confirm that Whiteru was a trespasser when WMATA allegedly failed to timely discover and aid him.  As the district court explained, the

---

[9] Plaintiffs similarly rely on the Third Restatement's discussion of "flagrant trespassers."  Br. 41.  But Plaintiffs do not suggest that D.C. law incorporates that discussion—which their other sources describe as a flawed "minority" rule. Henderson, Jr., *supra* note 5, at 1073; *see also id.* at 1076 (criticizing "flagrant-trespasser" rule as "inappropriate as a means of distinguishing among morally deserving and undeserving trespassers" and "introduc[ing] further confusion").

parties did "not dispute that the area behind the parapet wall is not typically held open to Metro passengers."  JA 799.

Although Plaintiffs now argue there is a dispute on that point (Br. 50-51), they cannot overcome the clear record.  With its motion for summary judgment, WMATA filed a "Statement of Material Facts."  ECF 105 at 24.  Plaintiffs' response did not dispute that the trough area (at least four feet below the station platform and behind a 3-foot parapet wall on the platform) "measures 53 inches" wide, "contains uplights that illuminate the outer station wall and mounted electrical conductors on the station wall structure," and is "unauthorized for Metro passengers."  ECF 105 at 24-25 ¶¶ 2-5; ECF 106-3 at 1-2; *see also* D.D.C. Civ. Local R. 7(h)(1) (on summary judgment, statement of facts deemed "admitted" to extent not "controverted").  Nor did Plaintiffs assert that the area was accessible "in any normal and ordinary manner," *Firfer*, 208 F.2d at 528, or that a "reasonable person" could possibly "believ[e] that" WMATA had given consent for passengers to enter the area, *Boyrie*, 58 A.3d at 478.[10]  Instead, Plaintiffs expressly assumed that Whiteru fell "in a location where

---

[10] Plaintiffs purported to dispute that "[t]here is no ordinary means for passengers to access the area" where Whiteru fell, but only by stating that "[t]he term 'no ordinary means' is unclear."  ECF 106-3 at 2.  Although Plaintiffs asserted that the area was "potentially accessible to the public," ECF No. 106 at 1, that is true of *any* off-limits area that a member of the public accesses (*i.e.*, any area where a member of the public trespasses).

passengers are not permitted."  ECF 106 at 7; *see also id.* at 9, 11 (referring to location as "unauthorized" and "off limit[s]").

There was no basis to argue otherwise.  "It must be apparent to any reasonable person" that WMATA did not expressly or implicitly invite passengers to enter a 53-inch wide trough area that houses lighting and electrical equipment at least four feet below the station platform and behind a three-foot wall.  *Whitaker*, 1984 U.S. DIST LEXIS 16712, at *12; *accord Firfer*, 208 F.2d at 528 (because entering the "grassy plot" where his injury occurred required climbing a wall, "squeezing through a thick hedge," or "jumping three 'steps' each with a riser of two feet or more," the plaintiff was a trespasser).  Plaintiffs attempt to draw an arbitrary distinction between the trough area and train tracks.  *See* Br. 50-51.  But both can only be understood as off-limits based on common sense and "the natural and artificial obstacles to an entry," regardless of whether there were "warning signals."  *Firfer*, 208 F.2d at 528-529; *accord Whitaker*, 1984 U.S. DIST LEXIS 16712, at *10.

Without having identified any genuine issue of material fact, Plaintiffs resort to the conclusory argument that "whether a plaintiff was trespassing when injured *** is well-established as a factual question."  Br. 50.  Not always.  In some cases, the parties will genuinely dispute whether a person was in an area that was held open to him at the time of the relevant injury, and the jury must resolve such disputes.  *E.g.*, *Boyrie*, 58 A.3d at 478-479; *Ward*, 433 A.2d at 1073.  But "questions of fact

*** become questions of law" when "there is but one reasonable inference which may be drawn from undisputed facts." *District of Columbia v. Brown*, 589 A.2d 384, 388 (D.C. 1991); *accord Copeland*, 416 A.2d at 3 (on a motion for summary judgment, "the trial court was correct in classifying Mr. Copeland as a trespasser"). Here, "the undisputed facts *** establish as a matter of law that [Whiteru] was a trespasser[.]" *Boyrie*, 58 A.3d at 479.

### B. Plaintiffs Do Not Allege Any Intentional, Willful, Or Wanton Misconduct

If there is "[n]o contention" that the defendant breached the lesser duty of care owed to trespassers, the defendant "cannot possibly be subject to liability." *Firfer*, 208 F.2d at 219. That applies here, because "[w]illful and wanton conduct *** was not alleged or shown in opposition to the motion for summary judgment." *Lacy*, 684 A.2d at 394; *see* JA 18-27 (alleging only "negligent" conduct). Nor do Plaintiffs argue on appeal that WMATA engaged in intentional, willful, or wanton conduct.

Plaintiffs' failure to allege willful or wanton conduct—or even discuss the willful-wanton standard—reflects their recognition that not inspecting a trough area housing lighting and electrical equipment, even if negligent, is not "reckless disregard for the lives of others." *Whitaker*, 1984 U.S. Dist. LEXIS 16712, at *31 (internal quotation marks omitted). That conduct is a far cry from a conductor operating a train under the influence of cocaine, *see Johnson*, 764 F. Supp. at 1574, or a landlord declining to fix a window-screen after being warned repeatedly about

33

the risk it posed to specific young children, *Gould*, 330 F.2d at 829-830 (jury could find "wil[l]ful or wanton misconduct" where "what was feared would happen did happen"). Without any allegation of comparable conduct, WMATA cannot be liable. *See, e.g.*, *Toomer*, 112 A.3d at 327 & n.4; *Copeland*, 416 A.2d at 4; *Coulston*, 2020 WL 1236563, at *3.[11]

### C.    Whiteru's Contributory Negligence Bars Recovery Given His Trespasser Status

Even if mere negligence could constitute a breach of the duty owed to Whiteru despite his trespasser status, Whiteru's undisputed contributory negligence would bar recovery. As this Court recognized in the prior appeal, "[t]he District of Columbia is one of the few jurisdictions in which the claimant's contributory negligence can act as a complete defense to the defendant's liability for negligence." *Whiteru*, 25 F.4th at 1057 (alteration in original) (quoting *Jarrett v. Woodward Bros., Inc.*, 751 A.2d 872, 985 (D.C. 2000)). To be sure, D.C. law "allows for some

---

[11] WMATA's alleged breach of internal procedures does not affect this analysis. "[F]ailure to comply with *** procedures" by itself is not even "proof of *negligence*"; rather, it is admissible only "on the issue whether due care was exercised by the employee under the particular circumstances." *Jeanty*, 718 A.2d at 177-178 & n.11 (emphasis added); *see also Coulston*, 2020 WL 1236563, at *1, *3 (rejecting trespasser's theory of liability despite WMATA's alleged failure to comply with its rules and procedures); *cf. Copeland*, 416 A.2d at 3 (a violation of federal law is a breach of the duty owed to trespassers only if "the statute or regulation [was] intentionally violated and it *** appear[s] that the omission will probably result in injury").

exceptions to the strict application of contributory negligence." *Id.* at 1059. For example, under the "last clear chance doctrine," a plaintiff can overcome his own contributory negligence when, among other requirements, the plaintiff's initial "position of danger [was] caused by the negligence of both [the] plaintiff and [the] defendant." *Belton*, 20 F.3d at 1199, 1201 (emphasis omitted).[12] And this Court concluded that "[c]ommon carrier liability pursuant to Section 314A of the Restatement is another such exception." *Whiteru*, 25 F.4th at 1059.

But no such exception to the contributory negligence bar applies here. As discussed (pp. 25-27, *supra*), Section 314A applies only to "passengers." This Court "did not consider the question of whether contributory negligence would apply if Whiteru instead were a trespasser" who had exceeded the scope of his passenger-status. JA 806. And there is "no basis" in D.C. case law "to suggest that a common-carrier exception vitiates contributory negligence when the plaintiff is a trespasser," *id.*, let alone an *unknown* trespasser. Even if Plaintiffs could overcome the mountain of precedent establishing that WMATA cannot be held liable for injury to a trespasser based on mere negligence, Plaintiffs could not overcome D.C.'s "general contributory-negligence rule[.]" JA 807. Here again, this Court should reject Plaintiffs' thinly-veiled invitation to depart from controlling D.C. law.

---

[12] "Both sides agree that this [last clear chance] exception does not apply here." JA 805 (citing *Whiteru v. WMATA*, 480 F. Supp. 3d 185, 197 (2020)).

## CONCLUSION

This Court should affirm.

Respectfully submitted,

/s/ Pratik A. Shah

| | |
|---|---|
| Michael Weisbuch | Pratik A. Shah |
| AKIN GUMP STRAUSS HAUER & | Anthony T. Pierce |
| FELD LLP | Caroline L. Wolverton |
| 100 Pine Street | AKIN GUMP STRAUSS HAUER & |
| Suite 3200 | FELD LLP |
| San Francisco, CA 94111 | 2001 K Street NW |
| (415) 765-9501 | Washington, D.C. 20006 |
| | (202) 887-4000 |
| | pshah@akingump.com |

*Attorneys for Defendant-Appellee*
*Washington Metropolitan Area Transit Authority*

Dated: May 16, 2023

## CERTIFICATE OF COMPLIANCE

The foregoing brief is in 14-point Times New Roman proportional font and contains 8,596 words, and thus complies with Federal Rule of Appellate Procedure 32(a) and Circuit Rule 32(e)(1).

Dated:        May 16, 2023

*/s/ Pratik A. Shah*
Pratik A. Shah

## CERTIFICATE OF SERVICE

I hereby certify that, on May 16, 2023, I served the foregoing brief upon counsel of record by filing a copy of the document with the Clerk through the Court's electronic docketing system.


*/s/ Pratik A. Shah*
Pratik A. Shah